IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

CASSANDRA NEWBERN, individually
and on behalf of J.B., a minor                                                                PLAINTIFF

v.                                               CIVIL ACTION NO. 3:24-CV-283-MPM-RP

DESOTO COUNTY SCHOOL DISTRICT,
DESOTO COUNTY, MISSISSIPPI, CITY OF
SOUTHAVEN, SOUTHAVEN POLICE DEPARTMENT,
BRENT VICKERS, CHIEF OF POLICE, in his official capacity,
and OFFICER ERIN HILL, in his individual and official capacities        DEFENDANTS

**ORDER**

This cause comes before the court on the motion of defendant Erin Hill, a police officer with the Southaven Police Department, to dismiss the claims against him pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This court also has before it Rule 12(b)(5) motions to dismiss filed by all defendants, seeking dismissal based on inadequate service of process. *Pro se* plaintiff Cassandra Newbern, suing individually and on behalf of her minor child J.B, has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, is prepared to rule.

Plaintiff filed this action seeking damages under, *inter alia*, § 1983 for a September 28, 2023 incident in which her daughter J.B. was arrested by Officer Hill at the Desoto County Central Middle School, for having allegedly caused a disturbance of the peace on school grounds. Plaintiff has sued the City of Southaven and Officer Hill for constitutional violations arising from this allegedly false arrest, and she also asserts claims against the Desoto County

1

School District, based on various federal disability laws, for having allegedly failed to provide an adequate public education for her daughter, who is developmentally disabled with ADHD and other disabilities.

This court notes that the basic facts of this case appear to be in considerable doubt, since plaintiff frequently phrases crucial allegations in her complaint in terms of her "belief" regarding what happened, such as her contention that Hill deliberately provided false information to a municipal judge in obtaining a warrant for J.B.'s arrest. [Amended complaint at 8]. In particular, plaintiff offers her "belief" that Hill falsely told the judge that J.B. had "flipped *over*" tables in the cafeteria, when she had, in fact, "flipped off" (by raising her middle finger) students at another table. [*Id.*]. This court discusses these uncertainties in the facts in greater detail below, but it does seem clear that, after J.B.'s arrest, she was transported to the Desoto County Juvenile Detention Center in Hernando and charged with disturbing the peace on school property. Plaintiff alleges that, after J.B. was arrested, she was given a court date for the charge against her but that this charge was dismissed at the request of the SPD before any trial took place.

With these allegations in mind, this court considers first Officer Hill's motion to dismiss the claims against him based on the doctrine of qualified immunity. Qualified immunity shields a governmental official from civil liability for damages based upon the performance of discretionary functions if the official's acts did not violate clearly established constitutional or statutory law of which a reasonable person would have known. *Easter v. Powell*, 467 F.3d 459, 462 (5th Cir. 2006). The court follows a two-pronged analysis to determine whether a defendant is entitled to qualified immunity, inquiring (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional

right and, (2) whether the constitutional right was clearly established at the time the conduct occurred. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

It is well established that a defendant who "pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion" thereby places the burden on the plaintiff to "rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997). "The plaintiff bears the burden of negating the defense and cannot rest on conclusory assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct." *Gatson v. Winston County, Miss.* 2014, WL 585810, at *5 (N.D. Miss. 2014)(internal citations omitted). It is thus the plaintiff, rather than the defendant, who must do most of the "heavy lifting" in the qualified immunity context. *Young v. Bd. of Supervisors of Humphreys Cnty., Mississippi*, 2018 WL 632024, at *1 (N.D. Miss. Jan. 30, 2018).

In responding to Hill's qualified immunity motion, plaintiff tacitly concedes her lack of certainty regarding many of the crucial facts of this case, since she vigorously argues in favor of being allowed to perform qualified immunity-related discovery before these issues are decided. This court would, in fact, ideally prefer to resolve most qualified immunity motions at the summary judgment stage, but its discretion to do so is considerably narrowed by recent Fifth Circuit precedent. This court notes that, at one time, it was relatively rare to encounter Rule 12 qualified immunity motions, since litigants appeared to recognize that most § 1983 cases raise fact-intensive questions which are best addressed in the context of a summary judgment motion following discovery.

In this court's experience, the number of Rule 12(b)(6) qualified immunity motions has greatly increased following the Fifth Circuit's decision in *Carswell v. Camp*, 54 F.4th 307, 311

3

(5th Cir. 2022). In *Carswell*, the Fifth Circuit appeared to view the practice of deferring ruling on qualified immunity motions until discovery has been performed with considerable skepticism, although it stopped short, in its final opinion, of precluding it altogether. This court notes that the Fifth Circuit's initial opinion in *Carswell*, released in June 2022, explicitly held that the limited qualified immunity-related discovery long permitted in this circuit under *Lion Boulos v. Wilson*, 834 F.2d 504, 508–09 (5th Cir. 1987) and its progeny had been implicitly overruled by the U.S. Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). *Carswell v. Camp*, 37 F.4th 1062 (5th Cir. 2022). The Fifth Circuit's original opinion in *Carswell* made this overruling quite clear, writing "[c]all it 'careful,' or call it 'narrow'; either way, today we call *Lion Boulos* and its progeny overruled." *Carswell*, 37 F.4th at 1066.

In its modified opinion on denial of rehearing, the Fifth Circuit panel in *Carswell* removed any reference to the overruling of *Lion Boulos* and its progeny, perhaps in recognition of the facts that 1) one Fifth Circuit panel may not overrule decisions of another panel and 2) other Fifth Circuit panels had continued to apply *Lion Boulus* after *Ashcroft*. Nevertheless, even the revised opinion in *Carswell* appears to provide a highly restrictive interpretation of the qualified immunity-related discovery permitted by *Lion Boulos*, stating that:

> Three points about this "careful procedure" bear emphasis. First, its purpose is only to allow the district court to rule on the defendant's assertion of QI; its purpose is not to provide a backdoor for plaintiffs to circumvent the defendant's immunity from suit. *Backe* [*v. LeBlanc*], 691 F.3d [645] at 649 [(5th Cir. 2012)]. Second, where the QI-asserting official determines that any pre-ruling discovery sought or ordered in the district court crosses the line from permissible *Lion Boulos* discovery to impermissible vitiation of the official's immunity from suit, the collateral order doctrine authorizes an immediate appeal like the one we entertain today. *Ramirez* [*v. Guadarrama*], 3 F.4th [129] at 133 [(5th Cir. 2021)]. And third, *Lion Boulos* and its progeny must be understood in light of subsequent Supreme Court precedent. The Supreme Court has now made clear that a plaintiff asserting constitutional claims against an officer claiming QI must survive the motion to dismiss without any discovery.

4

*Carswell*, 54 F.4th at 311.

It appears that there presently exists considerable uncertainty regarding the state of Fifth Circuit law in this context, since the *Carswell* panel appeared to view the discovery long permitted by *Lion Boulos* with heavy disfavor, although it stopped short, in its revised opinion, of declaring it overruled. This court believes that this is an area of the law which would benefit from clarification by the *en banc* Fifth Circuit, but, barring such, it can only conclude that the Fifth Circuit takes a much dimmer view of the granting of qualified immunity-related discovery in § 1983 cases than it once did. As it happens, however, there are unique facts in this case, arising both from 1) weaknesses in plaintiff's amended complaint, and 2) what appears to be outright dishonesty on her part in briefing the law, which lead this court to conclude that qualified immunity-related discovery would be improper even under the pre-*Carswell* standards.

With regard to the first consideration, this court notes that there are serious weaknesses in plaintiff's complaint and briefing regarding both the factual and legal bases for her claims, and these weaknesses leave her in a much weaker position to seek remand-related discovery. In so stating, this court reiterates that the first prong of the qualified immunity standard requires a showing that the official "violated a statutory or constitutional right." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). In this case, plaintiff's ability to make this showing is seriously harmed by the fact that key portions of her amended complaint (and briefing) are frequently either vague and equivocal or, even worse, seem to factually contradict each other. For example, plaintiff alleges in her amended complaint that:

> 16. It is believed that Hill incorrectly and falsely stated to a Desoto County state judge that J.B. had "flipped *over*" tables in the cafeteria, thus getting a judge's approval for the arrest of J.B. Nevertheless, Hill, the Desoto County School (Desoto County Central Middle School) Assistant Principal Bey and Desoto County School Counselor, Ms.

5

> Glenn, who was named as J.B.'s "Safe Person" KNEW the truth or should have known the truth that J.B. had <u>not</u> flipped over any tables. ***
> 19. Defendants alleges [sic], as it was reported to Assistant Principal Bey, that J.B. tore up the written schedule change notice and <u>flipped off</u> (meaning put up her middle finger) a table of other students in the cafeteria, because she became angry about her schedule change as it was <u>hard for JB to adjust to change</u>.
> 29. J.B. was transported to the Desoto County Juvenile Detention Center in Hernando, Mississippi, which is also in Desoto County, and charged with Disturbing the Peace on School Property, and she was held in a small cell for over 18 hours.

[Amended complaint at 8].

Plaintiff thus states her "belie[f]" that Hill "incorrectly and falsely stated to a Desoto County state judge that J.B. had 'flipped *over*' tables in the cafeteria," but at no point in the amended complaint does she indicate what factual basis, if any, she has for such a belief. Plaintiff provides no clarification in this regard in her briefing. Perhaps more importantly, any allegation that Hill falsely stated that plaintiff had flipped over a table seems to be flatly contradicted by the amended complaint's subsequent allegation that "[d]efendants alleges [sic], as it was reported to Assistant Principal Bey, that J.B. tore up the written schedule change notice and flipped off (meaning put up her middle finger) a table of other students in the cafeteria." Clearly, Hill is one of the defendants in this case, and, since plaintiff contends that these "defendants" allege that J.B. "gave the finger" to fellow students, it becomes that much more necessary for her to explain her "belief" that he told something completely different to the municipal judge.

In so stating, this court notes that there are serious plausibility concerns regarding the substance of plaintiff's allegation as it relates to Hill. Indeed, it seems clear to this court that, in order to establish an actual constitutional violation by Hill, plaintiff would be in a much stronger position if she could establish, as she seems to allege to be the case, that he told a *deliberate lie* by informing a judge that she had "flipped over a table" when he knew that she had actually only

6

raised her middle finger. Without question, this would be much easier for plaintiff to prove if she could demonstrate that Hill personally witnessed her actions in the cafeteria, instead of merely hearing about them after the fact and becoming confused by the similarity in the terms "flipping off" and "flipping over." Indeed, the latter scenario seems more akin to an honest mistake than a deliberate lie, and this court has considerable doubt whether such a mistake would be sufficient to establish a constitutional violation on his part.

In so stating, this court notes that probable cause exists only if, in the totality of the circumstances, the "facts available to the officers at the moment of the arrest would warrant a [person] of reasonable caution in the belief that an offense has been committed." *Beck v. Ohio,* 379 U.S. 89, 96, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Consistent with this principle, the U.S. Supreme Court has stated that:

> [W]hat is generally demanded of the many factual determinations that must regularly be made by agents of the government—whether the magistrate issuing a warrant, the police officer executing a warrant, or the police officer conducting a search or seizure under one of the exceptions to the warrant requirement—is not that they always be correct, but that they always be reasonable.

*Illinois v. Rodriguez,* 497 U.S. 177, 185, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). In this vein, one federal appellate court has written that, in determining whether there is probable cause, officers are charged with knowledge of any "readily available exculpatory evidence" that they unreasonably fail to ascertain. *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1259 (10th Cir. 1998) (quoting *Clipper v. Takoma Park,* 876 F.2d 17, 19–20 (4th Cir. 1989)).

In light of this authority, this court believes that plaintiff would greatly strengthen her constitutional claims if she could establish fact issues that Officer Hill did, in fact, tell a judge that J.B. had flipped over tables at the school cafeteria, that he had actual knowledge that this was false at the time he said it that he acted unreasonably in failing to gain such knowledge. Of

course, it is unreasonable to expect plaintiff to have omniscience regarding events which she did not witness, but there do appear to be ways in which she could have buttressed the allegations in her complaint, based upon the information available to her. In this vein, this court notes that plaintiff's daughter was obviously present at the cafeteria during the crucial events, and, that being the case, she was presumably in a position to know whether Hill personally witnessed them or not. The fact that the amended complaint includes no specific allegation that Hill personally witnessed these events makes it seem even less likely that he did, in fact, do so. Moreover, if Officer Hill only learned about the events after the fact from others, then that would clearly raise the strong possibility of a reasonable mistake on his part regarding what J.B. supposedly did.

      In the court's view, the scenario in which Hill told a deliberate lie to the judge is rendered less plausible is the fact that any attempt on his part to "frame" plaintiff by falsely accusing her of physically flipping over tables in the cafeteria seems doomed to fail. After all, this is not a case where the facts giving rise to the arrest were known only to the officer and the arrestee. Far from it, the events took place in a school cafeteria, where, presumably, there were many other witnesses who could, and would, establish what actually happened. That being the case, it is very much unclear to this court why Hill would have told a deliberate lie in this regard when even the most basic factual inquiry would have revealed the untruthfulness of his account. In light of the foregoing, it seems unlikely to this court that any officer would have maliciously attempted to frame a student in such a manner by telling a deliberate lie about what she had done.

      While there thus appear to be significant weaknesses in plaintiff's amended complaint in this case, this court would likely conclude that she has sufficiently alleged a constitutional

violation to entitle her to discovery on the first prong of the qualified immunity standard, if its discretion to do so were not so severely limited by *Carswell*. That brings this court to the crucial fact that, even if it is to assume for the sake of argument that Officer Hill's alleged actions in this case constitute a violation of applicable Fourth Amendment standards, that would still not be sufficient to allow plaintiff to overcome Hill's qualified immunity defense. This is because, in § 1983 cases, defeating a qualified immunity defense requires not only that the alleged conduct be in violation of the U.S. Constitution or other federal law, but that this illegality have been "clearly established" at the time it was committed. *Id.*

This court, and many other judges, have expressed serious reservations about the "clearly established" prong, *see, e.g. Bartlett v. City of Winona,* 748 F. Supp. 3d 413, 432 (N.D. Miss. 2024), but, as binding U.S. Supreme Court authority, it is not in a position to disregard it. Moreover, from reviewing plaintiff's briefing regarding the "clearly established" prong, it seems clear that the authorities she offers are either vague and specific in nature, or, much worse, appear to have been fabricated out of whole cloth. With regard to the former, the Fifth Circuit has repeatedly held that citations to generalized principles of law are insufficient to meet the "clearly established" prong, writing that:

> The Supreme Court has "repeatedly told courts ... not to define clearly established law at [that] high level of generality, "*Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S. Ct. 2074, 2084, (2011); *see also City of Escondido, Cal. v. Emmons*, –139 S.Ct. 500, 503–04, 202 L.Ed.2d 455 (2019) (per curiam). Rather, "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, ⎯⎯ U.S. ⎯⎯, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (per curiam) (quotation omitted); *see also Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008). That is because qualified immunity is inappropriate only where the officer had "fair notice"—"in light of the specific context of the case, not as a broad general proposition"—that his *particular* conduct was unlawful. *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (per curiam) (quotation omitted); *accord City & Cty. of San Francisco v. Sheehan*, ⎯⎯ U.S. ⎯⎯, 135 S.Ct. 1765, 1776, 191 L.Ed.2d 856 (2015).

*Morrow v. Meachum*, 917 F.3d 870, 875 (5th Cir. 2019).

9

Time and again, plaintiff fails to heed this admonition in her briefing. For example, plaintiff cites the Eighth Circuit decision of *Peterson v. City of Plymouth*, 60 F.3d 469 (8th Cir. 1995) in support of her contention that it is well established that "arresting a student without probable cause" and "using excessive force against a student" violate the Fourth Amendment's prohibition against unreasonable seizures. [Brief at 18-19]. This court notes that defendant correctly argues that this is not an accurate description of the holding in *Peterson*, and, as a decision of another circuit, it is a doubtful basis for "clearly establishing" the law in this circuit. Even if plaintiff's reliance upon *Peterson* had neither of these weaknesses, however, it would still be far too generalized a principle of law to meet the "clearly established" prong. *See, e.g. Morrow,* 917 F.3d at 875.

This is merely one example of plaintiff's improper reliance upon generalized principles of law in her briefing, but this court is much more concerned with the fact that she appears to have outright fabricated the limited "authority" she cites which appears at least somewhat analogous to this case. As noted by defendant in its briefing:

> Here, Plaintiffs cite to general propositions of law and cases that do not exist (or cannot be found) to try and carry their burden. This fails. At the risk of redundancy (and because of the sheer audacity of the Plaintiffs), Officer Hill will address each case:
> *B.S. v. Town of Shannon*, 978 So. 2d 614 (Miss. Ct. App. 2007). Plaintiffs cite this case for the proposition that "a student's use of profanity did not justify an arrest". This case does not exist. A LEXIS search for the case citation brings up *United Am. Ins. Co. v. Merrill*, 978 So. 2d 613 (Miss. 2007) and a search for the case name brings up no results. *Cox v. Hainey,* 391 F.3d 656 (6th Cir. 2004). Plaintiffs cite this case for the "finding that a student's disruptive behavior did not justify an arrest." This case with this citation does not exist. A LEXIS search for the case citation brings up *Haggerty v. Tex. S. Univ.,* 391 F.3d 653 (5th Cir. 2004).

[Reply brief at 14].

Much like defendants, this court has been unable to find either of these decisions relied upon by plaintiff, either by searching, on Westlaw, for the case citation or the case name she

10

provides. Defendant thus appears to be correct that the authority plaintiff cites does not exist, and, under these circumstances, this court believes that it was incumbent upon her to offer some sort of explanation for this (apparent) fact. In this vein, this court notes that, four days after defendant filed its reply brief accusing plaintiff of having used non-existent precedent in her brief, she filed a twenty-two page brief regarding discovery issues in this case, and at no point in that brief does she address the accusation that she fabricated authorities in her brief. [Docket entry 101-1]. This is a glaring omission, particularly considering that, in her brief, plaintiff does provide extensive arguments contesting the assertion that she is an abusive litigant. [Brief at 13].

In the court's view, the fact that plaintiff chose to address some of the "abusive litigant" accusations against her in her February 14, 2024 brief, but offered no defense to the claim that she had fabricated case law in her earlier briefing, clearly suggests that she has no good faith explanation for her actions. Instead, plaintiff repeatedly pleads for this court's leniency based on her *pro se* status, and, apparently believing that the "best defense is a good offense," she threatens to report defense counsel to the Mississippi Bar for having questioned her litigation tactics. [*Id.* at 13]. For its part, this court finds nothing inappropriate in the actions of defense counsel in this case, to the contrary, it appears that they are merely doing their best to represent their clients. Moreover, while this court is more than prepared to show leniency to *pro se* litigants for honest mistakes resulting from their lack of legal expertise, bad faith litigation tactics are something else entirely.

In light of the foregoing, this court believes that it would arguably be justified in dismissing this case based upon plaintiff's litigation tactics alone, but, considering her *pro se* status and, more importantly, the fact that the interests of a child are involved, it will limit its sanction to the qualified immunity context in which the non-existent precedent was provided.

11

Sanctions aside, this court concludes that plaintiff has failed to establish the second prong of the qualified immunity standard, for reasons which it has already discussed above. This court therefore concludes that Hill's qualified immunity defense is well taken, and the federal claims asserted against him individually will be dismissed. Of course, the qualified immunity defense relates only to *federal* law claims, and this court will reserve judgment on any potential state law claims which plaintiff might have against Hill (including any malicious prosecution claim) until after it has considered the facts developed during discovery.

     This court also has before it motions filed by the Southaven and Desoto County defendants to dismiss for lack of service of process [41-1, 49-1], and it does appear that plaintiff failed to properly effectuate service of process in this case. As noted previously, however, this court wishes to make at least some inquiry into the substantive merits of the claims in this case before it dismisses a lawsuit involving the welfare and education of a child. In so stating, this court observes that it is possible for two things to be true at once, and the fact that plaintiff apparently felt compelled to cite non-existent authorities as to the qualified immunity defense raised by Hill does not necessarily mean that she has no valid claims against the remaining defendants. Moreover, J.B. is certainly not at fault for her mother's briefing practices, and it would arguably be unfair to punish her for those practices. Moreover, it appears that plaintiff did make good faith efforts to serve process upon defendants and it further seems clear that their counsel were aware that she was trying to serve them, albeit incorrectly. For example, the Southaven defendants note in their brief that "[a]ll [defendants] were served via certified return receipt mail and without any forms or acknowledgements to sign," [brief at 4] and it is undisputed that counsel for the Desoto County defendants refused to accept the service which plaintiff attempted to make on them.

While defendants appear to be correct that the service methods chosen by plaintiff were not those which were required by the Federal Rules of Civil Procedure, this is not a basis upon which this court is prepared to dismiss a lawsuit filed by a *pro se* plaintiff. Fed. R. Civ. P. 4(m) states that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." This court concludes that, considering plaintiff's *pro se* status and the fact that she has made good faith efforts to serve process which did put defendants on actual notice of this litigation, "good cause" exists for her failure to serve process and that a dismissal of this case without prejudice would not be appropriate. This court therefore concludes that, assuming that plaintiff has still not properly served process upon defendants, she should do so within one month of this order. With this caveat, defendants' motions to dismiss for lack of service of process will be denied, and it suggests that, in the future, they concentrate upon any defenses they might have to the substance of plaintiff's allegations.

In so stating, this court notes that defendants would doubtlessly be able to point to a large number of legal weaknesses in the amended complaint drafted by plaintiff, and this is hardly surprising considering that she is a *pro se* litigant. In *pro se* cases, however, this court is more concerned with reaching the correct result based upon the underlying *facts* of the case, and not in judging the legal skills of someone who is not a lawyer. In this case, this court is faced with allegations, inartfully pled though they may be, that a police officer deliberately lied in obtaining an arrest warrant and that a mentally disabled child is not receiving the education to which she is

entitled under the Americans With Disabilities Act (ADA) and the Individuals With Disabilities Education Act (IDEA).

This court's natural inclination is to be quite hesitant to second-guess teachers and school administrators regarding any good faith decisions they might make in determining how a particular child should be educated. After all, they, and not this court, are the trained and experienced educators who are doing a difficult job with limited resources. Moreover, federal courts are simply not in a position to rule upon each and every deficiency which a parent might believe exists in the education of their child, and the law does not expect them to do so. Still, there are cases in which the education provided to a disabled child becomes so deficient as to constitute a violation of the ADA and or IDEA, and this court presently has no idea whether or not this might be such a case. This court likewise has no idea what transpired during plaintiff's arrest in this case, and it would like greater clarity in this regard before it rules on the merits of plaintiff's remaining claims.

In light of the foregoing, this court concludes that it should use the much greater discretion which it enjoys to permit discovery as to the non-qualified immunity issues in this case, and it concludes that any further motions to dismiss in this case be filed in the context of a summary judgment motion following discovery. With this caveat, it is ordered that Officer Hill's motion to dismiss the federal claims against him on the basis of qualified immunity [69-1] is granted and defendants' motions to dismiss for lack of service of process [41-1, 49-1] are denied. This court has previously noted the excessive number of motions filed by plaintiff in this case, and, as to the motions which remain pending this court rules as follows:

Plaintiff's motion to strike Hill's answer to the complaint [26-1] is denied, plaintiff's motions to exceed page limitation [28-1, 57-1, 97-1] are granted, various parties' motions for

14

extensions of time [35-1, 62-1, 86-1] are dismissed as moot, plaintiff's motion in limine to exclude evidence of prior school disciplinary actions [30-1] is dismissed without prejudice since this is far too early to be filing motions in limine, plaintiff's motion for default judgment [55-1] is denied, plaintiff's motion to strike [61-1] defendant's motion to dismiss is denied, plaintiff's motion for discovery [95-1] is denied, Officer Hill's motion to strike plaintiff's motion for qualified immunity-related discovery [102-1] is denied,[1] and plaintiff's motion to file a reply brief [100-1] is granted.

Having addressed the extraordinarily large number of motions filed in this case, this court will lift its previously-entered stay on the filing of new motions. However, this is by no means a license for plaintiff to resume her practice of filing unnecessary motions, and this court trusts that Judge Percy will keep a close eye on plaintiff's filings in this regard. Moreover, any failure on plaintiff's part to adhere to this court's admonition regarding excessive filings will merely serve to increase the suspicion that she is an abusive litigant who should be regarded as such in this court's rulings (and those of Judge Percy). Finally, this court warns the plaintiff that any further false or fictitious citations will entitle her to a show cause hearing to determine whether this entire case should be dismissed with prejudice and whether further sanctions, including attorneys' fees, should be awarded.

This, the 9th day of April, 2025.

/s/ Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI

---

[1] In so ruling, this court agrees that this filing is largely duplicative, but it was made prior to its order regarding plaintiff's excessive number of motions. This court will therefore permit it, with the understanding that any future motions which plaintiff files will be more closely scrutinized.