IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

CASSANDRA NEWBERN, individually
and on behalf of J.B., a minor                                                    PLAINTIFF

v.                                                        CIVIL ACTION NO. 3:24-CV-283-MPM-RP

DESOTO COUNTY SCHOOL DISTRICT,
DESOTO COUNTY, MISSISSIPPI, CITY OF
SOUTHAVEN, SOUTHAVEN POLICE DEPARTMENT,
BRENT VICKERS, CHIEF OF POLICE, in his official capacity,
and OFFICER ERIN HILL, in his individual and official capacities       DEFENDANTS

**ORDER**

Defendant Erin Hill has filed a motion to stay this case pending his appeal of this court's denial of his Rule 12 motion to dismiss the state law claims against him. This court lacks jurisdiction over a case once it has been appealed to the Fifth Circuit, and the motion to stay is therefore clearly due to be granted.

In granting this stay, however, this court wishes to correct what it regards as a mischaracterization of its prior order in Hill's motion, namely that he is appealing a ruling denying his assertion of immunity under Mississippi state law. In reality, this court's order involved nothing more than an assessment that it should first permit discovery regarding such matters as whether Hill told a deliberate lie in obtaining an arrest warrant before it rules, in the context of a summary judgment motion, on the validity of plaintiff's state law claims against him. As discussed below, Mississippi law is clear that officers such as Hill enjoy immunity as to certain state law causes of action, but not as to others. That being the case, it is clearly necessary

1

for this court to first determine what forms of misconduct, if any, Hill might have committed in this case before it can make an informed assessment as to whether he enjoys immunity.

This court notes that, in her brief in response to Hill's motion to dismiss, plaintiff specifically asserted that she intended to assert a malicious prosecution claim against him, [docket entry 77-1 at 11] and it is far from clear to this court that such a claim would lack merit under Mississippi state law *if* the evidence developed in discovery suggests that Hill told a deliberate lie in seeking an arrest warrant in this case. Moreover, given plaintiff's stated intent, this court would likely be willing, under the lenient standards applicable to *pro se* litigants, to give her an opportunity to amend her complaint to more specifically assert a malicious prosecution claim if the evidence developed in discovery suggests that such a claim has potential merit. In its dismissal order, this court emphasized plaintiff's potential malicious prosecution claim in explaining its decision to order discovery as to her state law claims. Specifically, this court wrote that it would "reserve judgment on any potential state law claims which plaintiff might have against Hill (including any malicious prosecution claim) until after it has considered the facts developed during discovery." [Slip opinion at 12].

In highlighting a potential malicious prosecution claim, this court assumed that defendant was aware of Mississippi Supreme Court precedent holding that malicious prosecution claims are *not* subject to the provisions of the Mississippi Tort Claims Act (MTCA), and that, as such, individual officers enjoy no immunity as to such claims. Specifically, the Mississippi Supreme Court has held that:

> Under Section 11–46–5(2), torts in which malice is an essential element "are not within the course and scope of employment." *Zumwalt*, 19 So.3d at 688. "Thus, these intentional torts are outside the scope of the MTCA's waiver of immunity, and the MTCA does not apply." *Id.* Rather, "any legal action against a governmental employee for these intentional torts must necessarily proceed against him or her as an individual." *Id.*

2

> Malice is an essential element of malicious prosecution. *Strong v. Nicholson*, 580 So.2d 1288, 1293 (Miss. 1991). This means, to prove UMMC's officers committed malicious prosecution, Oliver must prove the officers acted with malice. If he meets this burden, then necessarily he has proven they were acting outside the course and scope of their employment for purposes of the MTCA. *See* Miss. Code Ann. § 11–46–5(2) (Rev. 2012); *see also* Miss. Code Ann. § 11–46–7(2) (Rev. 2012) (containing identical provision). For UMMC, this means, as a matter of law, it cannot be liable, and sovereign immunity cannot be considered to have been waived for the alleged malicious conduct of its officers. So the circuit court erred by not granting UMMC summary judgment on this basis.
> For McBeath and Stewart, this means Oliver's malicious-prosecution action necessarily proceeds against them in their individual capacities. *See Zumwalt*, 19 So.3d at 688. Because the MTCA does not apply, Section 11–46–7(2) does not act as a shield against individual liability.

*Univ. of Mississippi Med. Ctr. v. Oliver*, 235 So. 3d 75, 82–83 (Miss. 2017).

In objecting to this court's decision to conduct discovery as to the state law claims against him, Hill cites his alleged immunity under state law, writing that "immunities are an immunity from suit rather than a mere defense to liability." [Docket entry 122-1 at 1]. It is unclear to this court whether, in writing these words, defendant was aware of *Oliver*'s clear holding that the MTCA offers no immunity to municipal officers as to malicious prosecution or other malice-based claims asserted against them. Regardless, it seems clear to this court that any evidence that Hill told a deliberate lie in seeking an arrest warrant in this case would tend to support a finding of "malice" on his part, and, as quoted above, malice-based claims do, in fact, fall outside of the scope of the MTCA. *See* Miss. Code Ann. § 11-46-7(2)(excepting claims for "fraud, malice, libel, slander, defamation or any criminal offense" from the scope of the MTCA).

In light of the foregoing, this court continues to believe that a factual inquiry into whether Hill might have committed one of the forms of misconduct set forth in § 11-46-7(2) is called for before it rules upon the validity of the state law claims against him. This is because, while it seems certain that at least some of the state law claims which plaintiff might wish to assert against Hill would be barred by the provisions of the MTCA, others (including, potentially, a

3

malicious prosecution claim) might well not be. That being the case, it clearly seems necessary for this court to have at least some idea, factually speaking, how much wheat and chaff exists in this regard so that it might separate them on summary judgment. Moreover, in the event that the proof in discovery reveals no genuine issues of fact regarding malice or some other potential basis for liability under Mississippi state law, then this court may dismiss Hill from this case entirely.

It appears to this court that, in objecting to this court's decision to conduct discovery before ruling on the state law claims against him, Hill is essentially arguing in favor of an extension of the Fifth Circuit's decision in *Carswell v. Camp*, 54 F.4th 307, 311 (5th Cir. 2022) to plaintiff's state law claims. However, while *Carswell* does, in fact, serve to significantly limit a district court's discretion to order discovery prior to ruling upon a qualified immunity defense, qualified immunity only applies to *federal* claims asserted under § 1983, and not to state law claims. Moreover, Hill has provided this court with no authority suggesting that either the Mississippi Supreme Court or the Fifth Circuit have provided similar limitations upon a trial court's discretion to order discovery which it believes to be relevant to making a proper determination of liability under Mississippi state law.

In its ruling, this court made specific note of a number of questions which it had regarding the facts of this case, [slip op. at 5-9], and it should thus be apparent that this is not a case where it ordered discovery simply for the sake of doing so. To the contrary, this court made clear its belief that there are specific factual questions which should be clarified before it makes a final ruling regarding the state law claims in this case, and this belief would be even stronger today if plaintiff's description of newly-discovered video evidence in this case is accurate. Plaintiff discusses this evidence in her motion to reconsider this court's ruling sustaining Hill's

4

qualified immunity defense, and while it lacks jurisdiction to substantively rule upon this motion now, it will make some preliminary observations in this context.

It should be noted at the outset that plaintiff's burden of obtaining reconsideration is made much more difficult by the fact that the court's order sustaining Hill's qualified immunity defense was issued largely as a *sanction* for plaintiff having fabricated authorities in her briefing in this case. Significantly, plaintiff's motion to reconsider does not take issue with the fact that certain cases she cited in her qualified immunity briefing do not actually exist, although she raises the possibility that this was simply an innocent mistake on her part. [Docket entry 109 at 4-5]. This court regards this as an underwhelming response to its finding that she fabricated authorities, and it greatly complicates any effort on her part to obtain reconsideration on the basis of newly-discovered evidence. This is because even plaintiffs who have potentially strong evidence in their favor cannot be permitted to fabricate legal authorities in their briefing, for reasons which should be obvious.

This court further regards plaintiff's suggestion that her citation to non-existent authorities might have been an innocent mistake to be quite implausible. In so stating, this court notes that the authorities in question were not merely background precedent cited in plaintiff's generalized discussion of the law, but were, rather, key authorities which she offered in attempting to meet her burden of establishing the second prong of the qualified immunity standard. Indeed, this court's first impression upon reading plaintiff's description of the "cases" in question was that they stood on a much higher plane than the other authorities she cited, since they were at least somewhat specific and on point. It was only upon closer scrutiny that this court realized that these authorities did not actually exist.

This court submits that plaintiff's prior record of litigating this case makes her suggestion that she made an honest mistake in her briefing even less plausible. In the court's view, there has been, from the start, an almost obsessive quality to plaintiff's filings in this case, and the volume and length of those filings suggest that she may have become consumed by this litigation. Both this court and Judge Percy have found it necessary to threaten plaintiff with sanctions for her excessive filings, but these warnings appear to have had little effect. This court will show defendants the same leniency which it has shown plaintiff with regard to the length of their briefs, but she should not conclude that her willingness to disregard court orders has been without cost (or will be in the future). To the contrary, this court regards plaintiff's repeated disobedience of prior orders as an important factor militating against her request to essentially be given a slap on the wrist for manufacturing authorities in her qualified immunity briefing.

Leniency considerations aside, this court regards plaintiff's litigation history as an important factor in assessing whether she deliberately cited non-existent authorities in this case. Indeed, given plaintiff's prior history, it seems very much in character that, having been unable to find authority sufficiently on point to meet the "clearly established" prong, she would have decided instead to simply manufacture precedent out of whole cloth. Under these circumstances, the possibility of an innocent mistake on plaintiff's part seems exceedingly remote, assuming that it could ever be possible for a plaintiff to "accidentally" cite a non-existent case with a fictitious name, citation and holding.

This court would further emphasize that, quite apart from any sanctions considerations, qualified immunity motions are somewhat unique in that, once the defense is raised, the burden of meeting both prongs of the qualified immunity standard falls upon the plaintiff. Moreover, it obviously becomes very difficult for a plaintiff to argue that she met her burden under the

"clearly established" prong when the only non-generalized precedent she cited simply does not exist. In so stating, this court notes that it, and many other federal judges, have expressed concerns with the exceedingly harsh results which often result from an application of the "clearly established" prong. *See, e.g. Perkins v. Panola Cnty. Bd. of Supervisors*, 709 F. Supp. 3d 260, 269 (N.D. Miss. 2024); *Jamison v. McClendon,* 476 F. Supp. 3d 386, 408 (S.D. Miss. 2020); *Zadeh v. Robinson*, 928 F.3d 457, 479–80 (5th Cir. 2019)(Willett concurring). This court continues to have these concerns today, but it is not at liberty to disregard binding U.S. Supreme Court precedent, and it would be absurd to contend that a plaintiff could meet the "clearly established" prong with non-existent authorities. It is thus apparent that plaintiff would find it very difficult to argue that she met the "clearly established" prong in this case, even if this court had no intention to sanction her at all.

This court's ruling was, in fact, intended partially as a sanction, but it believes that it showed plaintiff considerable leniency by not dismissing this entire case outright, and by limiting its sanction to the qualified immunity context. This court did so largely in recognition of the fact that plaintiff is suing on behalf of a minor child, and its ruling permitting discovery on her state law claims will allow it to ascertain whether her rights may have been violated in this case and, if so, what this court should do about it. In this vein, this court notes that it is possible for two things to be true at once, namely that plaintiff is an abusive litigant *and* that Hill acted in a very reprehensible manner towards a minor child in this case. That being the case, this court believes that it must attempt to strike an appropriate balance between its obligation to uphold the integrity of the litigation process, while not losing sight of the fact that the interests of a child are at stake. This court's ruling dismissing plaintiff's federal claims against Hill, while allowing her to

7

proceed with discovery on her state law claims against him, represents its best effort to balance these important considerations.

Having noted the competing considerations in this context, this court will return to the discovery issues which form the heart of the current dispute in this case. In doing so, this court notes that, as of February 3, 2025, plaintiff was seeking discovery to obtain, among other things, access to Hill's body-worn camera footage of the relevant events in this case. [Docket entry 95 at 2]. Of course, this is the sort of qualified-immunity related discovery which has become much more difficult for plaintiffs to obtain following *Carswell*, and this court has expressed serious concerns regarding this fact. In a 2022 decision, for example, this court wrote that:

> This court believes that this circuit was well served by the "old" law in this context, which trusted district courts to decide whether the qualified immunity issues before them were best decided under Rule 12 as a matter of law, or under Rule 56 following a limited and expedited period of discovery. In so stating, this court notes its belief that most district judges who elect for discovery are not interested in shirking their responsibility to give defendants an early ruling on their qualified immunity motions; they simply wish to reach a correct result in the cases before them. It is much easier for district courts to have confidence that they are doing so if they have at least a basic knowledge of the relevant facts of the case. This court notes that, sometimes, strong plaintiffs are represented by lawyers who fail to do as thorough a job as they might in drafting the complaint and/or researching law "clearly establishing" a constitutional violation. By ruling on qualified immunity motions after at least some discovery, district courts are hopefully able to gain a clearer picture regarding how strong a factual case they have before them, and not merely how proficient the parties' lawyers are.

*Adelsheimer v. Carroll Cnty., Mississippi*, 639 F. Supp. 3d 699, 701 (N.D. Miss. 2022).

This court's inclination is thus to err on the side of permitting plaintiffs to conduct discovery regarding their claims, and it should be stressed that, while *Carswell* severely restricts a district court's ability to order such discovery in qualified immunity cases, it does not eliminate it completely. In light of this fact, this court might well have granted plaintiff's request for qualified immunity-related discovery in this case, had she not cited non-existent authorities in her qualified immunity briefing. In actual fact, however, this court had no reason to grant

8

plaintiff discovery regarding the first prong of the qualified immunity standard when she had fabricated authorities regarding the second prong and was thus doomed to fail in her federal claims regardless. This court continues to believe that even *pro se* plaintiffs must be held accountable for their abusive litigation practices, and plaintiff will therefore face a difficult burden in seeking to convince it to reconsider its ruling dismissing her federal claims, once it regains jurisdiction over it.

      While this court will make a formal ruling on these issues at a later date, it appears, based on plaintiff's motion to reconsider, that she has obtained the bodycam video she sought, presumably as part of the regular discovery process in this case. This court will not discuss this video evidence in any detail in this order, but, if it is as described by plaintiff, then it would serve to greatly increase concerns regarding whether Hill acted with an improper motive in this case. According to plaintiff, Hill is repeatedly heard in the video expressing a desire to punish her daughter J.B. for perceived problems with her "attitude," rather than a genuine belief that she had violated any laws. [Docket entry 108 at 10-11]. Plaintiff's description of the video also serves to greatly increase concerns that Hill did, in fact, falsely tell a judge that J.B. had been "flipping tables" in the cafeteria and whether, at a minimum, he acted in reckless disregard of the truth in making this representation. [*Id.*] Plaintiff further represents that Hill has been disciplined by his supervisors for his actions in this case, and this likewise constitutes a matter which seems worthy of further inquiry in discovery.

      This court notes that plaintiff filed her motion to reconsider on April 30, 2025 and yet, as of the writing of this order, none of the defendants have filed a response in which they take issue with either the existence of the video evidence or with plaintiff's description of it. To the contrary, Hill has filed a motion to strike plaintiff's motion to reconsider based not upon any

9

alleged misrepresentations in her motion but, rather, upon her having exceeded the page limitation for briefing set forth in the local rules. [Docket entry 120 at 1-2]. It is perhaps unfair to read too much into defendant's silence on an issue, and plaintiff's litigation history causes it to regard any representations which she makes regarding the evidence with considerable caution. Still, it should go without saying that plaintiff's (presently unrebutted) representations regarding the video evidence in this case only strengthen this court's belief that discovery should be allowed to proceed with regard to her state law claims. Indeed, it appears that the video evidence referenced by plaintiff represents the early fruits of this court's order requiring discovery as to her state law claims, and, if her description of that video is accurate, then it would regard it as a vindication of its decision to order such discovery.

For his part, Hill appears to regard these early fruits of discovery as being sour indeed, and he now seeks to "shut it down," lest even more inconvenient facts come to light. This court believes that such would be improper, for the reasons stated in this order. In any event, jurisdiction over this case presently lies with the Fifth Circuit, and this court will leave it to that court to decide whether this is one of the "rare and unique cases" where it should consider an interlocutory appeal of a denial of a motion to dismiss state law claims. *See McKay v. LaCroix*, 117 F.4th 741, 746 (5th Cir. 2024). In his motion to stay, Hill cites *Walton v. City of Verona*, 82 F.4th 314, 320 (5th Cir. 2023)[1] as one such case where the Fifth Circuit chose to consider a denial of a motion to dismiss state law claims, but that case involved a final denial of summary

---

[1]This court notes that *Walton* involved a claim against a Mississippi municipality, and such municipalities not subject to the unique body of MTCA law applicable to claims against individual employees. As discussed previously, § 11-46-7(2) as interpreted in *Oliver* essentially gives Hill the same status as any other Mississippi resident regarding a malice-based claim such as malicious prosecution, and any assertion of "immunity" on his part is misplaced, as to such a claim.

judgment by the trial court, after discovery had been completed. As such, the defendant in *Walton* had the district court's "final answer" as to the state law immunity questions, and that may have been a factor in the Fifth Circuit's choosing to consider it on interlocutory appeal. *Id.*

In this case, by contrast, this court has by no means rejected Hill's defenses to the state law claims against him; to the contrary, it has simply made clear its desire to have further development of the facts before it rules upon these issues in the context of a summary judgment motion. Thus, even assuming that there is a rule of law allowing interlocutory Fifth Circuit review of rulings denying immunity under state law, this court has made no such ruling. This court has, rather, made a ruling which will simply allow it to learn what Hill *actually did in this case* to determine whether his actions fall within one of the categories of misconduct listed in § 11-46-7(2), as to which he enjoys no immunity. Once again, these categories include claims based on "fraud, malice, libel, slander, defamation or any criminal offense," and, while malicious prosecution is one which instantly comes to mind, there may well be others, depending upon what the evidence demonstrates that defendant did in this case. Of course, the evidence developed in discovery may establish that Hill did not commit any of the specified forms of misconduct and that he is entitled to dismissal on summary judgment. This court's mind is fully open in this regard, but it needs to know what actually happened in this case before it can make an informed ruling regarding these matters.

It appears to this court that, having already caught a very large break by virtue of plaintiff having cited non-existent precedent in her qualified immunity briefing, Hill would now shut off the one remaining avenue by which the nature of his actions in this case might come to light. In the court's view, this result would be contrary to basic considerations of justice and fairness, since a civil lawsuit is, once again, supposed to be a search for the truth. Moreover, while

11

plaintiff is making specific representations regarding powerful video evidence in her favor, Hill is relying upon motions to strike her briefing for being too long and filing highly unorthodox interlocutory appeals seeking to stop discovery from proceeding regarding her state law claims. Under these circumstances, it seems quite clear to this court which party to this litigation seems most afraid of an inquiry into the truth, and, for all her weaknesses as a litigant, that party is not plaintiff. This court further notes that its decision to enter this order was based partly upon its recognition that, as a *pro se* litigant, plaintiff is in no position to bring many of the issues discussed above to the Fifth Circuit's attention, indeed, it doubts whether she can even afford to attend oral argument. This court trusts that, as officers of the court, counsel for Hill will include this order in the appellate record and address this court's finding in their appellate briefing, so that the Fifth Circuit may likewise make an informed ruling in this case.

Having addressed certain issues in this case which this court regards as significant, Defendant's motion to stay [122-1] will be granted. Given that this case seems likely to be pending before the Fifth Circuit for an extended period of time, this court will dismiss the other pending motions [108-1, 113-1, 120-1] in this case without prejudice to their refiling following the Fifth Circuit's ruling on appeal.

It is therefore ordered that this case is stayed pending the Fifth Circuit's ruling on the interlocutory appeal in this case.

This, the 12th day of May, 2025.

/s/ Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI