# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### OXFORD DIVISION

**CASSANDRA NEWBERN, individually
and on behalf of J.B., a minor**                                    **PLAINTIFF**

**v.**                                    **CIVIL ACTION NO. 3:24-CV-283-MPM-RP**


**DESOTO COUNTY SCHOOL DISTRICT,
DESOTO COUNTY, MISSISSIPPI, CITY OF
SOUTHAVEN, SOUTHAVEN POLICE DEPARTMENT,
BRENT VICKERS, CHIEF OF POLICE, in his official capacity,
and OFFICER ERIN HILL, in his individual and official capacities**         **DEFENDANTS**


### ORDER

This court presently has before it two dispositive motions as to which plaintiff Cassandra Newbern, acting on behalf of her minor daughter J.B., has neither filed a response nor sought additional time to do so. The first of these motions is a Rule 12(b)(6) motion to dismiss filed by the Desoto County defendants [146-1], and it seems clear that plaintiff's failure to respond to this motion was a deliberate one. Indeed, plaintiff specifically referenced this motion to dismiss in a motion that she filed before Magistrate Judge Percy, seeking a clarification of whether a pending stay on service of process issues meant that she was not required to respond to the county defendants' motion to dismiss. [152-1 at p. 2]. Judge Percy plainly informed plaintiff that she was, in fact, required to respond to the motion, writing that:

> As previously ordered, the order staying this matter does not stay or relieve any defendant of its obligation, once served, to answer or otherwise respond to the amended complaint in a timely manner. Similarly, the plaintiff is not relieved of her obligation to respond to any motion in a timely manner pursuant to the Federal Rules of Civil Procedure.

1

[Docket entry 155-1]. Consistent with her behavior throughout this litigation, plaintiff chose to simply ignore Judge Percy's plain directive, just as she has repeatedly ignored other directives which he has provided, and just as she has repeatedly ignored directives of this court. While plaintiff may have disagreed with Judge Percy's ruling, that ruling remained the law of the case unless and until she sought review of that ruling and obtained a favorable ruling from this court.[1] Lacking any responsive briefing from plaintiff, this court finds the county defendants' motion to be well taken, and it hereby adopts the reasoning in their thorough briefing on these issues.

That brings this court to the second unopposed motion to dismiss in this case, filed by the City of Southaven defendants. This motion is based on recent discovery violations on plaintiff's part and based also on the cumulative impact of an extremely long list of instances, which have been recounted in prior orders of Judge Percy and of this court, in which plaintiff has demonstrated a blatant disrespect for the orders and directives of both Judge Percy and this court. Having reviewed the City's motion, this court agrees with and adopts the arguments and authorities therein, with a limited exception which it discusses below. For her part, plaintiff is clearly not in a position to complain about the granting of motions to which she did not even bother to respond, even though she has demonstrated herself to be more than capable (albeit likely with the assistance of AI programs) of responding to such motions.

In their motion to dismiss, the Southaven defendants provide what this court considers a good summary of the extensive warnings which this court has given plaintiff regarding her repeated violations of its orders, those of Judge Percy and of the Federal Rules of Civil Procedure, as follows:

> Since early in this litigation, the *pro se* plaintiff Cassandra Newbern has received numerous warnings from the Court. *See e.g.,* Order, [Doc. 87] at 1; Order, [Doc. 104] at

---

[1] This court would have very likely deferred to Judge Percy's judgment in this regard.

2

1-2; Order, [Doc. 106] at 5, 9-12, & 15; Order, [Doc. 123] at 5-6; Order, [Doc. 135] at 1-3; Order, [Doc. 138] at 1-2. Yet, it appears that none have stuck, and Plaintiff's misconduct has continued into discovery, significantly prejudicing the Southaven Defendants. For instance, on January 28, 2025, this Court wrote that "it is apparent from the docket in this case that the plaintiff is a prolific filer of motions, giving the appearance that she may be filing motions just for the sake of filing motions, which will do little to advance her cause and is a drain on the court's resources[,]" and that "[t]he plaintiff is warned against abusing the judicial process by clogging the court's docket with frivolous motions such as the present one." [Doc. 87] at 1.

Importantly, in its Order on April 9, 2025, this Court recognized that Plaintiff had been engaging in "what appears to be outright dishonesty on her part in briefing the law[.]" Order, [Doc. 106] at 5. In fact, the Order stated that "this court is much more concerned with the fact that [Plaintiff] appears to have outright fabricated the limited 'authority' she cites which appears at least somewhat analogous to this case." Order, [Doc. 106] at 10. There, the Court found that Plaintiff's failure to address the accusation that she fabricated authorities in her brief while choosing to address others "clearly suggests that she has no good faith explanation for her actions." Order, [Doc. 106] at 11.

In fact, in its April 9, 2025 Order, this Court already found and stated "that this court believes that it would arguably be justified in dismissing this case based upon plaintiff's litigation tactics alone[.]" *Id.* However, the Court ultimately decided that "considering her *pro se* status and, more importantly, the fact that the interests of a child are involved, it will limit its sanction to the qualified immunity context in which the non-existent precedent was provided." *Id.* In closing, this Court wrote that "this court warns the plaintiff that any further false or fictitious citations will entitle her to a show cause hearing to determine whether this entire case should be dismissed with prejudice and whether further sanctions, including attorneys' fees, should be awarded." Order, [Doc. 106] at 15.

Indeed, this Court later recognized in respect to the numerous warnings it had given Plaintiff that "these warnings appear to have had little effect." Order, [Doc. 123] at 6. Thus, the Court warned Plaintiff once more that "she should not conclude that her willingness to disregard court orders has been without cost (or will be in the future)." *Id.* "To the contrary, this court regards plaintiff's repeated disobedience of prior orders as an important factor militating against her request to essentially be given a slap on the wrist" which at that point was related to her manufacturing authorities. *Id.*

Significantly, the Court later noted that Plaintiff had "made reference to using artificial intelligence [AI] software in her past filings, [see docket entry 101 at 18], and it suspects that she is following a strategy of using AI programs to generate an excessive number of overlong motions and thereby drive up the costs of defending this case for defendants." Order, [Doc. 135] at 2. The Court further stated that it was hesitant to dismiss the case at that stage due to Plaintiff's abusive tactics "and awarding monetary damages does not appear to be a realistic option with a *pro se* plaintiff of limited financial means." *Id.* However, the Court once again emphasized that "this court will not allow its prior orders to be repeatedly ignored." *Id.* Thus, the Court clearly stated in its Order on July 11, 2025: "If this lesser sanction fails to produce results, then this court will, in fact, consider dismissing this case outright." *Id.* at 3.

3

> As such, this Court decided that it would "reserve judgment on any potential state law claims which plaintiff might have against Hill (including any malicious prosecution claim) until after it has considered the facts developed during discovery." *Id.* Thus, after an extended period in which this action was stayed, including so that Plaintiff could finally execute service of process on all parties herein, *see e.g.,* Order, [Doc. 135] at 1-3; Order, [Doc. 138] at 1-2; Order, [Doc. 144] at 1-2; Order, [Doc. 156], at 1; Order Lifting Stay, [Doc. 161] at 1. The Southaven Defendants immediately engaged in discovery once the stay was lifted. Order Lifting Stay, [Doc. 161] at 1; Order Setting Scheduling Deadlines, [Doc. 163] at 1; Not. Of Service, Southaven Defs. First Disc. Reqs. To Pltf, [Doc. 165]; Not. Of Service, Def. Hill Resp. To Pltf. RFA, [Doc. 166]; Not. Of Service, Def. Hill Resp. To Pltf. First Disc. Reqs., [Doc. 167].

[Defendants' brief at 2-3].

In describing plaintiff's recent abuses of the discovery process, defendants first argue that "plaintiff has since refused to meaningfully or truthfully engage in discovery," [brief at 4] and that "[s]hockingly, plaintiff provide[d] a number of **intentionally and demonstrably false answers** to Defendants' requests for admissions, interrogatories, and requests for production." [Brief at 6]. Defendants' characterization of plaintiff's actions in discovery appears to be accurate, and this court could hardly conclude otherwise, given that she offers no arguments in response. Defendants devote over twenty pages of their brief to specific instances in which plaintiff abused the discovery process, and this court can discern no purpose to quoting those pages, given plaintiff's failure to offer any arguments in her defense. Moreover, while this court might have chosen to hold a hearing on these accusations if plaintiff had bothered to respond to defendants' motion, there is no reason to issue a show cause order on its own motion when a party has already filed a motion requiring the plaintiff to respond and she failed to do so.

In so stating, this court notes that it uses evidentiary hearings to *supplement* the parties' briefing, when such a hearing is necessary to evaluate the credibility of the parties and their proof. Clearly, such hearings were not intended to serve as a *substitute* for the briefing process, nor as a basis for excusing a plaintiff's failure to respond to a motion to dismiss. While this

court therefore agrees with defendants that plaintiff has abused the discovery process in her recent responses, its agreement that this case should be dismissed is based upon the totality of plaintiff's actions in this case, of which her recent discovery violations are merely a part. While this court agrees with and adopts the arguments of the Southaven defendants in their brief, it will provide some additional observations of its own as to why it believes that dismissal is in order, quite apart from plaintiff's failure to respond to defendants' motion seeking that remedy.

The term "contempt" is often used to describe the willful disregard of court orders, and this court believes that, in this case, this term perfectly captures plaintiff's attitude towards the federal judiciary, or at least two of its judges. Armed with her admitted use of AI programs, plaintiff clearly believes that she knows better than two federal judges how a civil case should be tried, and she has repeatedly demonstrated her willingness to disregard their directives when they displease her. Indeed, if one were to speak of "strikes" in this regard, then this is not a matter of plaintiff having incurred three strikes; rather, this court believes that her knowing violations of court orders passed double digits long ago. The fact that some of these violations involved matters which might be considered minor in and of themselves does not alter the fact that the contempt demonstrated by plaintiff's knowing violation of court orders is a very serious matter.

In many instances, plaintiff's decision to violate these orders did not make any apparent sense, such as the manner in which she resisted, for many months, directives from Judge Percy and this court that she comply with the FRCP's service of process requirements. It would have been far easier for plaintiff to simply serve process (as she eventually did), but it appears to this court that she views the litigation process as being, at least in large part, a test of wills between herself and the federal judges assigned to the case. In this context, plaintiff appears to regard compliance with the directives of those judges as constituting an admission of defeat. Moreover,

while plaintiff has made clear her view that both this court and Judge Percy are biased against her, the very extensive leniency which she has been shown in this case makes clear that this is untrue. This court notes that plaintiff recently filed a meritless motion seeking Judge Percy's recusal, but this court has consulted extensively with him in trying to bring some semblance of order to this case, and it knows that he has simply tried, much like this court, to deal with the fallout from one of the most difficult litigants to have come before this court.

Throughout this litigation, plaintiff has, when caught red-handed violating court orders and/or the Rules of Civil Procedure, repeatedly sought to plead her status as a *pro se* litigant. However, while a litigant's *pro se* status may often serve to excuse her limited knowledge of the law, it is no excuse for that litigant to adopt an attitude of contempt and willful disregard for court orders. In this vein, this court notes that the number of *pro se* filings in this district has, in recent years, seen a sharp rise. This court believes that this is largely a result of the advent of AI programs, which, defendants noted, plaintiff has admitted using in this case. Like other federal judges, this court has grappled with the impact of this new technology, and it may be, practically speaking, impossible to bar the *use* of such programs, partly because it is nearly impossible to prove that a particular filing was made using an AI program.

This court believes that this makes it that much more important to provide for accountability for the *abuse* of AI programs, such as by sanctioning the failure to double-check these programs' citations to authority to make sure they are not "hallucinated." In this case, plaintiff has cited non-existent case law in attempting to meet the "clearly established" prong of the qualified immunity standard, and this court granted the qualified immunity motion in question, both as a sanction and due to the rather obvious fact that one cannot "clearly establish" what the law is with non-existent precedent.

This court believes that it is also important that litigants, including *pro se* litigants, not be permitted to drive up the cost of litigation (and the settlement value of a case) by using AI to file a large number of overly long, repetitive, and/or otherwise bad faith motions. Otherwise, a situation is likely to develop whereby the "playbook" for *pro se* litigants calls for them to use AI to greatly drive up the nuisance value of claims and thereby ensure that defendants are motivated to pay significant settlements for even patently meritless claims. In so stating, this court notes that this case has not even left the discovery stage, and even the most cursory look at the docket makes it clear that plaintiff has driven up the cost of litigating this case beyond any justification for a case of this nature. This court believes that the expense which defendants have been unjustly forced to incur in this regard is another factor militating in favor of dismissal.

In previously refusing to dismiss this action, this court cited the fact that, whatever the litigation practices of her mother, the interests of a child are involved in this case. While this remains true to some extent, this court would hasten to add that it has become increasingly clear that plaintiff's claims against the Desoto County School District based on its alleged failure to provide an education tailored to her daughter's disabilities are without merit. Indeed, this court notes that this is one of the claims to which plaintiff refused to file a response, in spite of Judge Percy's specific finding that she was required to do so. While it was apparently important to plaintiff to demonstrate, once again, her defiance of Judge Percy's rulings and authority, the cost of that defiance is that this court has no arguments to consider in opposition to defendants' motion to dismiss. This court notes parenthetically that, legal issues aside, it never regarded plaintiff's claims in this regard to be, by any means, strong ones. In so stating, this court takes judicial notice of the fact that Desoto County is one of the most prosperous counties in Mississippi, and there have been extensive media reports of how its school district is considered

sufficiently desirable that residents of neighboring areas have faked residency in the county in order to benefit from those schools.[2] This is by no means a major factor in this court's analysis of these issues, and it places far greater weight on the unrebutted arguments in defendants' briefing. Still, the fact remains that, based on all information before it, this court harbors no worries that, by dismissing this case, it is consigning plaintiff's daughter to an inadequate education or to any other harm.

This court does acknowledge that its ruling today will serve to dismiss the one claim which, it has previously stated, appears to at least potentially have merit. That is plaintiff's remaining state law claims (including a malicious prosecution claim) against Officer Erin Hill, based on his having allegedly arrested J.B. on school grounds without good cause to believe that she had committed any crime. This court would hasten to add that, since this case has not passed the discovery phase, it has only limited indications of what the proof in this regard might show, but, in any event, plaintiff has given it no cause to believe that her daughter faces any kind of ongoing threat in this regard. Moreover, this malicious prosecution claim appears to represent a damages claim with a relatively moderate dollar value, and, if the interests of a child in obtaining such a damages award were held to justify any degree of bad faith on the part of a parent in litigating a case, then the parents of such children could engage in abusive litigation practices with near-impunity.

That brings this court to its belief that, if it did *not* dismiss this case based upon unopposed briefing seeking that dismissal, after having repeatedly warned plaintiff that she had

---

[2] *See, e.g.* https://dailymemphian.com/article/36824/desoto-county-schools-out-of-county-enrollees-misdemeanor, noting that "[t]he DeSoto County Board of Supervisors began the process of cracking down on non-residents who file false information to benefit from the county's services, particularly schools."

received all the leniency which she had a right to expect and could anticipate dismissal for future violations, then the credibility of its warnings and of its authority as a whole would be diminished. This court further concludes that it has exhausted all other realistic sanctions options, particularly since, it seems clear, plaintiff is not in a financial position to pay any fine. In this vein, this court notes that, in order to avoid dismissing this case outright, it has previously taken the approach of putting plaintiff in the "penalty box," so to speak, by staying this action until she complied with the service of process requirements. This court no longer regards this as a viable sanction, however, partly because doing so would ensure that this case, already severely delayed, is not completed within the three-year period strongly encouraged by the Civil Justice Reform Act.

While thus concluding that defendants' unopposed motions should be granted, this court will show plaintiff one final (and perhaps minor) bit of leniency, namely by making the dismissal of her state law claims against Officer Hill without prejudice. This court recognizes that this will, presumably, prevent plaintiff from re-filing her suit in federal court, since a federal court would lack jurisdiction over a state law action between two Mississippi citizens. Still, this court believes that this caveat upon its ruling today best reflects the fact that, through its ruling, it is attempting to vindicate the authority of federal courts, and it believes that, through her actions in this case, plaintiff has forfeited her federal court privileges for this particular cause of action. At the same time, it seems possible that Mississippi state courts will see these matters differently, and this court's ruling will not prohibit plaintiff from re-filing her state law claims against Hill in a Mississippi circuit court. It is unclear to this court whether Mississippi's statute of limitations would bar a re-filing of this action in state court,[3] or whether some other state law basis for re-

---

[3] It is unclear to this court, for example, whether some form of tolling might apply in this regard.

9

filing this action might apply.  This court will leave such questions to the circuit judge who considers any action which plaintiff might file.

With this caveat, the Southaven defendants' unopposed motion to dismiss is granted, and the Desoto County defendants' unopposed motion to dismiss is likewise granted.

A separate judgment will be entered this date, pursuant to Fed. R. Civ. P. 58.

This, the 10th day of August, 2026.


/s/ Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI

10